**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

RALPH F.,

                    Plaintiff,

                v.

COMMISSIONER OF SOCIAL SECURITY
ADMINISTRATION,

                    Defendant.

Civil Action No. 23-20882 (MAS)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

This matter comes before the Court upon Plaintiff Ralph F.'s ("Plaintiff")[1] appeal of the Commissioner of the Social Security Administration's (the "Commissioner") final decision denying Plaintiff's request for Disability Insurance Benefits ("DIB") under Title XVI of the Social Security Act (the "Act"). (ECF No. 1.) The Court has jurisdiction to review this matter under 42 U.S.C. § 405(g) and reaches its decision without oral argument under Local Civil Rule 78.1. For the reasons below, the Commissioner is affirmed.

**I.    BACKGROUND**

In this appeal, the Court must consider whether the Administrative Law Judge's (the "ALJ") finding that Plaintiff is not disabled is supported by substantial evidence. The Court begins with the procedural posture and the ALJ's decision.

---

[1] The Court identifies Plaintiff by first name and last initial only. *See* D.N.J. Standing Order 2021-10.

A.      **Procedural History**

On June 2, 2020, Plaintiff filed an application for DIB alleging disability beginning December 13, 2019. (AR 146-47, ECF No. 3.[2]) On December 8, 2020, Plaintiff's application was denied. (*Id.* at 15.) On May 7, 2021, Plaintiff's application for reconsideration was also denied. (*Id.*) On November 1, 2021, the ALJ held a hearing on Plaintiff's application. (*Id.*) Following the hearing, on April 13, 2022, the ALJ issued a decision denying Plaintiff's DIB application and finding that he was "not disabled under . . . the Act." (*Id.* at 9-26.) Plaintiff appealed that decision, and the Administration's Appeals Council denied Plaintiff's request for review. (*Id.* at 1-6.) Plaintiff then filed an appeal to this Court. (*See generally* Compl., ECF No. 1.) On December 20, 2023, Plaintiff filed his moving brief (ECF No. 5). The Commissioner opposed (ECF No. 9), and Plaintiff replied (ECF No. 10).

B.      **The ALJ's Decision**

The ALJ, in a written decision, concluded that Plaintiff was not disabled during the relevant time period under the prevailing administrative regulations. (AR 27.) To begin, the ALJ set forth the Social Security Administration's five-step sequential analysis for determining whether an individual is disabled. (*Id.* at 16-17.) At step one, the ALJ found that Plaintiff had "not engaged in substantial gainful activity since December 13, 2019, the alleged onset date [for his disability]." (*Id.* at 17.)

At step two, the ALJ determined that Plaintiff had several severe impairments during the relevant time period: (1) hypersomnia; (2) depressive disorder; and (3) anxiety disorder. (*Id.*) The ALJ found that Plaintiff's other alleged impairments are non-severe. (*Id.* at 18.) Specifically, the

---

[2] The Administrative Record ("AR") is located at ECF No. 3-5. The Court will reference the relevant pages of the AR and will not reference the corresponding ECF page numbers within those files.

ALJ considered the record and Plaintiff's statements and testimony to determine that Plaintiff has physical impairments that do not result in work-related limitations, including hypertension and diabetes mellitus in the context of a Body-Mass Index in excess of 30, COPD, obstructive sleep apnea, and alcohol abuse. (*Id.*)

Despite Plaintiff's impairments, the ALJ determined at step three that Plaintiff's impairments—namely, Plaintiff's hypersomnia, depression disorder, and anxiety disorder—did not meet or medically equate to one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526 during the relevant time period. (*Id.* at 18.)

The ALJ then considered the record and determined that through the date last insured, Plaintiff had the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 404.1567(c), except Plaintiff could not "climb ladders, ropes, and scaffolds and c[ould not] work with heavy machinery or at heights." (*Id.* at 20.) The ALJ also determined that Plaintiff could "occasionally climb stairs and ramps, crouch, crawl, stoop, kneel, and balance." (*Id.*) The ALJ then concluded that Plaintiff "is limited to performing simple, repetitive, and routine tasks," and that Plaintiff "would be off task ten percent of the day." (*Id.*)

At step four, the ALJ found that Plaintiff, through the date last insured, was unable to perform his past relevant work as a "broker." (*Id.* at 25.) The ALJ considered that Plaintiff was fifty-nine years old as of the date last insured, which is defined as "advanced age," and has at least a high school education. (*Id.*) The ALJ determined that "[t]ransferability of job skill[s] is not material . . . because using the Medical-Vocational Rules as a framework supports a finding that [Plaintiff] is 'not disabled,' whether or not the claimant has transferable job skills." (*Id.*) Based on the aforementioned factors and Plaintiff's RFC, the ALJ determined that there were alternative jobs that existed in significant numbers in the national economy that Plaintiff still could have

performed. *(Id.)* In doing so, the ALJ relied upon the testimony of the vocational expert, who testified that an individual of Plaintiff's age, education, work experience, and RFC would have been able to perform representative occupations such as: "linen room attendant"; "meat clerk"; or "hand launderer." *(Id.* at 26.)

At step five, the ALJ determined that Plaintiff was not disabled as defined in the Act, from the alleged onset of disability through the date of the decision. *(Id.)*

## II.    LEGAL STANDARD

### A.    Standard of Review

On appeal from the final decision of the Commissioner, the district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). To survive judicial review, the Commissioner's decision must be supported by "substantial evidence." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In reviewing the record for substantial evidence, the Court "may not weigh the evidence or substitute [its own] conclusions for those of the fact-finder." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (citation and internal quotation marks omitted). Even if the Court would have decided differently, it is bound by the ALJ's decision if it is "supported by substantial evidence." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) (citation omitted). The Court must "review the record as a whole

to determine whether substantial evidence supports a factual finding." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (citation omitted).

Even amid this deferential standard, the Third Circuit has explained that the Court's review must be a qualitative exercise requiring a thorough examination of the ALJ's decision and the record:

> [The substantial evidence standard] is not . . . a talismanic or self-executing formula for adjudication; rather, our decisions make clear that determination of the existence *vel non* of substantial evidence is *not* merely a quantitative exercise. A single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion. The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham.

*Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) (citation omitted). It is, thus, necessary for ALJs to analyze all probative evidence and set out the reasons for their decisions. *See Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000). If the ALJ has not analyzed all probative evidence and has not sufficiently explained the weight given to the evidence, the decision is not supported by substantial evidence. *See Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) ("[T]o say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." (citation and internal quotation marks omitted)). The ALJ must state both the evidence considered as well as the evidence rejected. *See Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981) ("Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is

required so that a reviewing court can determine whether the reasons for rejection were improper." (internal citation omitted)).

### B.    Establishing Eligibility for DIB

To be eligible for DIB under the Act, a claimant must be unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months[.]" 42 U.S.C. § 423(d)(1)(A). For purposes of the statute, a claimant is disabled only if his physical or mental impairments are "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A). A physical or mental impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Administrative regulations provide a five-step evaluation procedure to determine whether an individual is disabled. *See generally* 20 C.F.R. § 404.1520. For the first step, the claimant must establish that he has not engaged in any substantial gainful activity since the onset of his alleged disabilities. *Id.* § 404.1520(a)(4)(i). For the second step, the claimant must establish that he suffers from a "severe . . . impairment" or "combination of impairments." *Id.* § 404.1520(a)(4)(ii). The third step requires that the claimant provide evidence that his impairments are equal to at least one of the impairments listed in Appendix 1 of the regulations. *Id.* § 404.1520(a)(4)(iii). If the claimant demonstrates that he suffers from a listed impairment or that his severe impairments are equal to a listed impairment, he is presumed to be disabled and entitled to DIB benefits. *Id.*; 20 C.F.R.

§ 404.1520(d). If he cannot so demonstrate, the eligibility analysis proceeds to step four. *See* 20 C.F.R. § 404.1520(e).

Before considering step four of the sequential evaluation process, the ALJ must first determine the claimant's RFC. 20 C.F.R. § 404.1520(a)(4)(iv). In doing so, the ALJ must consider all of the claimant's impairments, including impairments that are not severe. *Id.*; SSR 96-8p, 61 Fed. Reg. 34474 (Jul. 2, 1996). Then, at step four, the ALJ determines whether the claimant's RFC permits him to resume previous employment. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant's RFC permits the resumption of previous employment, the claimant is not "disabled" and thus not entitled to DIB benefits. *Id.*; 20 C.F.R. § 404.1520(f). If the claimant cannot continue in this line of work, the analysis proceeds to step five. *See* 20 C.F.R. § 404.1520(f). Importantly, the burden of persuasion rests with the claimant in the first four steps. *See Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 763 (3d Cir. 2009).

At the fifth step, the burden shifts to the Commissioner to demonstrate that the claimant can perform other work consistent with his medical impairments, age, education, past work experience, and RFC. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c)(1). If the Commissioner cannot satisfy this burden, the claimant will receive DIB benefits. *Id.* § 404.1520(g).

III.    **DISCUSSION**

Plaintiff alleges that the ALJ erred in her decision denying DIB in determining Plaintiff's RFC because the ALJ failed to: (1) fully consider his physical functional ability; (2) fully consider the impact of his mental impairments; and (3) adequately complete the record. (*See* Pl.'s Moving Br., ECF No. 5-1.). The Court considers the arguments in turn and finds each unpersuasive.

A.    **ALJ's Physical RFC Determination**

The Court first addresses Plaintiff's challenge to the ALJ's physical RFC determination. Plaintiff makes two related arguments concerning the ALJ's physical RFC finding. First, Plaintiff argues that the ALJ's physical RFC finding was merely conclusory and not supported by the medical evidence in the record. (Pl.'s Moving Br. 12.) Second, Plaintiff argues that the ALJ failed to account for Plaintiff's strength function in the RFC determination. (*Id.*) The Court is unpersuaded by both assertions.

"Plaintiff bears the burden of proof at the point of RFC determination[.]" *Diaz v. Astrue*, No. 07-3220, 2008 WL 4104564, at *6 (D.N.J. Sept. 3, 2008) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)). It is not the Commissioner's burden to disprove a claimant's disability. *Sykes v. Apfel*, 228 F.3d 259, 262-63 (3d Cir. 2000). Therefore, a plaintiff must "connect the dots between an omitted medically determinable impairment (or condition) and resulting limitations on [his] functional capacity, consistent with [his] burden." *Vanessa T-H. v. Comm'r of Soc. Sec.*, No. 23-2293, 2024 WL 1635685, at *6 (D.N.J. Apr. 16, 2024) (citing *Louis v. Comm'r of Soc. Sec.*, 808 F. App'x 114, 117 (3d Cir. 2020)). In other words, a plaintiff must "affirmatively point . . . to specific evidence that demonstrates he should succeed." *Woodson v. Comm'r of Soc. Sec.*, 661 F. App'x 762, 766 (3d Cir. 2016) (citation omitted) (rejecting plaintiff's argument that ALJ erred at step three because plaintiff "never explain[ed] how, even if the ALJ's analysis was lacking, the deficiency was harmful" and because plaintiff "ha[d] not affirmatively pointed to specific evidence that demonstrates he should succeed."). "Gesturing in the direction of remand will not do." *Vanessa T-H.*, 2024 WL 1635685, at *6.

The ALJ is responsible for making the ultimate determination of an individual's RFC. 20 C.F.R. § 404.1546(c); *see Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011)

("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations."). "In making a[n] [RFC] determination, the ALJ must consider all evidence before him," and, although the ALJ may weigh the credibility of the evidence, he must "give some indication of the evidence which he rejects and his reason(s) for discounting such evidence." *Burnett*, 220 F.3d at 121; *see Cotter*, 642 F.2d at 706-07 (holding same). The indication of the ALJ's reasoning, however, may be "implicit" in the decision. *Diciano v. Comm'r of Soc. Sec.*, No. 18-17383, 2019 WL 6696523, at *5 (D.N.J. Dec. 9, 2019) (finding that, although the RFC did not specifically mention "the functions of sitting, standing, walking, lifting, carrying, or pushing . . . that does not mean the ALJ did not 'consider' those functions."); *Wise v. Comm'r of Soc. Sec.*, 626 F. App'x 357, 360 (3d Cir. 2015) ("We conclude that . . . the ALJ's discussion of the evidence in the record that implicitly supported [one psychologist's] criticism [of another psychologist's opinion] provided a reasonable basis for the ALJ not to include a limitation in the RFC about [the claimant's] inability to adapt to normal work pressures or changes.").

It is sufficient for the RFC determination to be supported by "substantial evidence" in the entire record, and it is unnecessary for the ALJ to engage in an explicit "function-by-function" analysis where the reasoning for the decision is implicit in the record. *Glass v. Comm'r of Soc. Sec.*, No. 18-15279, 2019 WL 5617508, at *8 (D.N.J. Oct. 31, 2019) ("Contrary to [p]laintiff's assertion otherwise, the . . . Third Circuit does not require an ALJ to perform a 'function-by-function' analysis at step four, so long as the ALJ's RFC determination is supported by substantial evidence in the record."); *Sheppard v. Comm'r of Soc. Sec.*, No. 19-18206, 2020 WL 5652450, at *5 (D.N.J. Sept. 23, 2020) ("Here, the RFC did not specifically reference the four non-exertional

functions, but that does not mean the ALJ did not consider those functions, singularly or in combination with [p]laintiff's other limitations from her various impairments.").

### 1.    The ALJ's RFC Finding was not Merely Conclusory.

In challenging the ALJ's physical RFC finding, Plaintiff simply contends that the ALJ's RFC determination was conclusory and not supported by the medical evidence, without citing to any specific evidence, medical or otherwise, that the ALJ failed to consider in rendering the physical RFC finding. (Pl.'s Moving Br. 12-14.) Plaintiff, therefore, has failed to surmount his burden of persuasion as he has not affirmatively pointed to any evidence in the record that the ALJ should have considered. *See Pickerin v. Colvin*, No. 14-6130, 2016 WL 5745103, at \*5 (D.N.J. Sept. 30, 2016) (affirming the ALJ's decision because the "[p]laintiff does not offer any specific limitations that the ALJ should have included in the RFC assessment[,]" even though "it is [the p]laintiff's burden to show that the ALJ's finding of [RFC] was not supported by substantial evidence"). Plaintiff "makes scant reference to anything the ALJ did write, but vaguely argues, without definitions or supporting authority," that the ALJ's findings are void of proper analysis. *Morris v. Comm'r of Soc. Sec.*, No. 19-8473, 2020 WL 6580778, at \*4 (D.N.J. Nov. 10, 2020). Such general arguments that remand to the ALJ is required are insufficient. *See Morris*, 2020 WL 6580778, at \*3. Because Plaintiff fails to point to any evidence in the record that he lacks the RFC ascribed by the ALJ, the Court declines to remand on this basis. *See Daniel J. v. Kijakazi*, No. 20-9053, 2022 WL 874459, at \*8 (D.N.J. Mar. 24, 2022) (declining to remand because the plaintiff did not identify "any specific functional limitations flowing from these conditions that the ALJ failed to include in the RFC.").

2.      *The ALJ's RFC Finding was Supported by Substantial Evidence.*

Plaintiff argues next that the ALJ's RFC determination was not supported by substantial evidence because his strength function was not considered. (Pl.'s Moving Br. 19-20.) In its own review of the ALJ's RFC determination, the Court finds that the ALJ's physical RFC finding fully accounted for Plaintiff's physical functions, including his strength. To that end, in assessing Plaintiff's physical RFC, the ALJ considered the objective medical and other evidence in the record, as well as Plaintiff's subjective complaints. (*See* AR 21.)

After carefully considering the evidence, the ALJ initially found it reasonable to conclude that Plaintiff had an exertional limitation despite state agency physicians finding to the contrary. (*Id.* at 24-25.) The ALJ noted that state physicians found that Plaintiff had "no exertional limitations but should avoid heights and hazards due to hypersomnia" and explained that these findings were "persuasive." (*Id.*) But, after considering the evidence in the light most favorable to Plaintiff, the ALJ nevertheless determined that Plaintiff's "fatigue could cause some difficulty with physically demanding activities." (*Id.*) Finding such, the ALJ adopted the state physicians' recommendations, which incorporated restrictions from heights and hazards as well as limitations to only postural movements. (*Id.*)

The ALJ then evaluated the intensity, persistence, and limiting effects of Plaintiff's symptoms to determine the extent to which they limit his work-related activities. (*Id.* at 21.) The ALJ concluded that Plaintiff's descriptions of his symptoms were not consistent with the substantial functional limitations that would be linked to hypersomnia and fatigue. (*Id.*) In doing so, the ALJ considered Plaintiff's physical examination findings, testimony, and other relevant evidence to support the finding that Plaintiff's symptoms do not prevent him from performing the physical demands of work with the assessed RFC. (*Id.*)

To support the ALJ's physical RFC finding, the ALJ began by citing various evidence from Plaintiff's doctor's appointments. (*Id.* at 21-22.) For instance, the ALJ first discussed the physical examination with Dr. Frank Coppolino and noted that it was generally benign. (*Id.* at 21.) The ALJ stated that "[Plaintiff] demonstrated normal gait, station, and movement of the extremities." (*Id.*) The ALJ then considered Plaintiff's physical examination with Dr. Matthew Davis and explained that the "physical examinations continue[d] to describe benign findings." (*Id.* at 22.) The ALJ further considered the examination findings of Dr. Deepinder Arora, concluding that the findings supported the physical demands assessed in the RFC. (*Id.* at 23.) In addition to the ALJ's analysis of findings from physical examinations, the ALJ also supported the physical RFC finding by evaluating Plaintiff's testimony of daily living activities. (*Id.*) Specifically, the ALJ explained that:

> At the hearing, [Plaintiff] testified that he can play golf in the morning and then go home and take a nap. He confirmed that he is able to drive. At the psychological consultative examination, [Plaintiff] described activities of daily living including attending to his own grooming and hygiene without difficulty, walking his dog, spending time at the gym and swimming in the pool, assisting with chores, visiting relatives, and sharing responsibilities for household chores and shopping with his wife . . . . [Plaintiff's] wide range of activities of daily living support a conclusion that [Plaintiff] can perform the exertional demands of medium work and that his daytime sleepiness does not interfere with engagement and performance of household tasks and personal activities.

(*Id.*)

Here, the Court finds that the ALJ's determination of the RFC is supported by substantial evidence in the record, as a fair reading of the decision shows that the ALJ did consider Plaintiff's physical functions, including strength, in her assessment. The ALJ's discussion of the record, including evaluation of physical examination records, Plaintiff's ability to golf, walk, swim, drive, spend time at the gym, and other items of evidence in the record, show that Plaintiff's functions were implicitly and explicitly considered in the RFC determination. *See Deraine A. v. Kijakazi*,

No. 23-3157, 2024 WL 3665811, at *8 (D.N.J. Aug. 5, 2024); *Smith v. Astrue*, 961 F. Supp. 2d 620, 652 (D. Del. 2013). To the extent Plaintiff alleges the ALJ did not engage in a detailed "function-by-function" assessment in her RFC analysis, such an assessment is unnecessary where, as here, there are implicit and explicit indications of the ALJ's reasoning in the record. *Glass*, 2019 WL 5617508, at *8; *Malcolm v. Comm'r of Soc. Sec.*, No. 16-8646, 2017 WL 5951703, at *19 n.14 (D.N.J. Nov. 30, 2017) (citation omitted) (finding that "the Third Circuit does not require strict adherence to the function-by-function analysis set forth in Social Security Ruling 96-8p").

As the ALJ considered all relevant evidence in the record and rendered findings that are supported by substantial evidence, the Court finds no reason to disturb the ALJ's physical RFC finding.

### B.    ALJ's Mental RFC Determination

Plaintiff argues next that the ALJ failed to fully consider the impact of his mental impairments in determining the RFC. (Pl.'s Moving Br. 18.) Plaintiff specifically contends that the ALJ based the RFC determination on "fatigue alone" and did not attribute the ten percent off-task limitation to the mental impairments. (*Id.* at 19.) Plaintiff also alleges that the ALJ's mental RFC assessment "lack[ed] sufficient articulation." (*Id.* at 15.) The Court disagrees.

As previously discussed, the RFC determination is reserved for the ALJ. 20 C.F.R. § 404.1546. As part of an RFC analysis, an ALJ must determine the intensity, persistence, and limiting effects of an individual's symptoms. 20 C.F.R. § 404.1529(c). In making this assessment, the ALJ must examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record. SSR 16-3p, 2017 WL 5180304, at *4 (Oct. 25,

13

2017). The ALJ will additionally consider daily activities; the location, duration, frequency, and intensity of pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c). The ALJ will also examine inconsistencies between the claimant's statements and the evidence presented. *Id.*

Here, Plaintiff's argument that the ALJ did not fully consider the impact of his mental impairments is unavailing. In assessing Plaintiff's RFC, the ALJ provided a sufficient narrative discussion of Plaintiff's entire medical record during the alleged period of disability. (AR. 21-25.) In fact, the ALJ formulated Plaintiff's RFC based on all relevant evidence, including the medical records and Plaintiff's subjective complaints and description of his own limitations.[3] (*Id.*) For example, when discussing Plaintiff's mental health treatment, the ALJ expressly noted that Plaintiff's depression and anxiety were "effectively managed with medication." (*Id.* at 22.) The ALJ did, however, acknowledge that Dr. Kenneth Freundlich, Ph.D.'s neuropsychological evaluation of Plaintiff, "described some difficulties with depression and anxiety since exposure to the World Trade Center attacks in 1993 and 2001." (*Id.* at 19.) But, the ALJ noted that Plaintiff's "mood disturbance and anxiety have not caused significant psychosis, delusions, hallucinations, or other significant abnormalities of thinking or perception." (*Id.*) The ALJ then pointed out that

---

[3] The ALJ's consideration of Plaintiff's mental impairments also included an evaluation of the "paragraph B" and "paragraph C" criteria. (AR 18-21.)

although Dr. Freundlich's evaluation suggested that Plaintiff's cognitive skills declined since he worked as a broker, his cognitive and intellectual skills, which were assessed in the low average range, still supported the conclusion that he could sustain the lesser demands of simple, routine, repetitive tasks. (*Id.*) Next, the ALJ considered the independent consultative examination findings of Dr. Arora, a neurologist, and Dr. Miller, a psychologist, to support the RFC determination. (*Id.*) After evaluating Dr. Arora's and Dr. Miller's reports, the ALJ determined that they both indicated that the Plaintiff's hypersomnia and mood and anxiety symptoms did not hinder his ability to meet the physical and mental demands of work within the assessed RFC. (*Id.* at 22.) Ultimately, the ALJ concluded that "the medical evidence of record supports a finding that [Plaintiff] remains able to sustain simple work at a reduced range of the medium exertional level with the opportunity for some time off task in addition to regular breaks." (*Id.* at 25.) Under these circumstances, the Court finds that the ALJ's mental RFC finding is supported by substantial evidence and that the ALJ provided a sufficient explanation for the RFC determination.

### C.    Adequacy of the Record

Plaintiff finally argues that the ALJ failed to adequately complete the record by not questioning him regarding "his abilities in the strength functions," and the written forms that Plaintiff filled out also did not elicit this information. (Pl.'s Moving Br. 13.) Plaintiff also argues that the ALJ should have obtained further opinion evidence regarding these strength functions. (*Id.* at 20.) Plaintiff claims the ALJ could not determine his RFC without adequate lay or medical evidence regarding his baseline functional capacity. (*Id.*) Plaintiff asks the Court to remand the matter to the ALJ with instructions to "undertake one or more of the options available to him under 20 CFR § 1520b(2)," such as "recontacting a treating source," sending the plaintiff for "a consultative exam," or "obtaining an opinion from a medical advisor either by interrogatories or

at a supplemental hearing." (*Id.*) Plaintiff asserts the ALJ had a duty to complete the record despite Plaintiff being represented by counsel, as the administrative hearing is not an adversarial proceeding. (*Id.*)

The Court has found that substantial evidence supported the ALJ's RFC determination that Plaintiff could perform medium work. Here, the ALJ did not need to request additional evidence before reaching the decision. Courts have consistently held that an ALJ is not required to request the submission of additional evidence where the ALJ's decision is otherwise supported by substantial evidence. *See Deraine A.*, 2024 WL 3665811, at *8; *see Masbeth v. Comm'r of Soc. Sec.*, No. 06-6076, 2008 WL 2637415, at *8 n.3 (D.N.J. June 27, 2008) (holding the ALJ was not required to seek additional evidence from a particular physician because there was substantial evidence, including a report from that same physician, that allowed the ALJ to reach a decision).

As such, because the Court already held that the ALJ's RFC determination was based on substantial evidence, the Court does not find that the ALJ should have requested additional evidence for the record.

## IV.    CONCLUSION

For the reasons outlined above, the Court affirms the Commissioner's decision. An Order consistent with this Memorandum Opinion will be entered.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE